UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIKRAM DATTA,

              Plaintiff,

-against-

DEA AGENTS, *et al.*,

              Defendants.

1:21-CV-2494 (LTS)

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Vikram Datta, who appears *pro se*, filed this action while serving his federal sentence in home confinement at his home in Laredo, Texas.[1] He sues: (1) "DEA Agents"; (2) "IRS Agents"; (3) "Magistrate Judges"; (4) "District Court Judges"; (5) "Appeal Court Judges"; (6) Peter Skinner, an Assistant United States Attorney ("AUSA"); (7) "other prosecutors"; (8) Jose Correa, a Drug Enforcement Administration ("DEA") Task Force Officer; (9) former Magistrate Judge Guillermo R. Garcia of the United States District Court for the Southern District of Texas; (10) Magistrate Gabriel W. Gorenstein of this court; (11) Anthony Maddalone, a DEA Task Force Officer; (12) Magistrate Judge Debra Freeman of this court; (13) John Post, a DEA Special Agent; (14) Miguel Carrera, a DEA Agent; (15) Mario Recinos, a Task Force Officer with the Passaic County (New Jersey) Sherriff's Department; (16) other "unknown Task Force Agents [DEA]" in New Jersey and Texas; (17) Magistrate Judge James L. Cott of this court; (18) retired Magistrate Judge Andrew J. Peck of this court; (19) "other Magistrate Judges involved"; (20) District Judge Lewis A. Kaplan of this court; and

---

[1] According to the Federal Bureau of Prisons's ("BOP") website, www.bop.gov, Plaintiff is currently in custody in the BOP's Residential Reentry Office in San Antonio, Texas.

(21) "Appeal Court Judges involved," which appears to be a reference to judges of the United States Court of Appeals for the Second Circuit.

Plaintiff specifies that he sues most of the defendants in both their official and individual capacities. He alleges that the defendants violated his federal constitutional rights, and he seeks damages and injunctive relief. He also asks the Court "to return his good name, [as well as] close the case [in his] favor." (ECF 1, at 10.)

Plaintiff has paid the relevant fees to bring this action. The Court construes Plaintiff's complaint as asserting claims against the defendants who are federal officers – including claims against DEA agents, federal judges, an AUSA, and agents of the Internal Revenue Service ("IRS") – under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Court also construes the complaint as asserting claims against Defendant Recinos – an employee of the Passaic County Sherriff's Department – under 42 U.S.C. § 1983. The Court further construes the complaint as a motion under 28 U.S.C. § 2255 to challenge Plaintiff's federal conviction or sentence.

For the reasons set forth below, the Court transfers those claims that constitute a second or successive Section 2255 motion to the United States Court of Appeals for the Second Circuit. The Court dismisses Plaintiff's remaining claims.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the relevant fees, if it determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court can also dismiss a complaint, or portion thereof, for failure to state a claim on which relief may be granted after giving the plaintiff notice and an opportunity to be heard.

*Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Plaintiff's claims arise from his January 15, 2011 arrest by DEA agents, his subsequent detention, and his prosecution in this court. He asserts that the events giving rise to his claims occurred in (1) Laredo, Texas;[2] (2) Newark, New Jersey; (3) Paterson, New Jersey; and (4) an unspecified location within this judicial district. In his complaint, Plaintiff refers to multiple docket numbers. But the only docket numbers listed that correspond to proceedings in which he was a party are 1:11-MJ-108 and 1:11-CR-0102, which are the docket numbers associated with his criminal proceedings in this court. Because Plaintiff challenges the legality of his arrest and subsequent prosecution in this court, the Court will summarize Plaintiff's criminal proceedings before further discussing the allegations in the complaint.[3]

---

[2] Although Plaintiff resides in Laredo, Texas, he alleges no facts showing that the events giving rise to his claims occurred there.

[3] The Court recounts the procedural history of Plaintiff's criminal proceedings by relying on the applicable electronic dockets. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court could take judicial notice"); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."); *see also Lev v. WAFRA Inv. Advisory Grp., Inc.*, No. 20-2709, 2021 WL 3118943, at *6 (2d Cir. July 23, 2021) ("[C]ourts may on a Rule 12(c) motion – just as on a Rule 12(b)(6) motion – consider extrinsic material that the complaint incorporate[s] by reference, that is integral to the complaint, or of which courts can take judicial notice. . . .") (citation and internal quotation marks omitted, alterations in original); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (noting that courts generally "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by

A.      *United States v. Datta*, 1:11-MJ-0108

On January 14, 2011, Defendant Maddalone, a DEA Task Force Officer, filed a criminal complaint in this court against Plaintiff; it was approved by Defendant Skinner, an AUSA, and it requested that Magistrate Judge Freeman issue a warrant for Plaintiff's arrest. (ECF 1:11-MJ-0108, 1.) On that same date, Magistrate Judge Freeman issued a warrant for Plaintiff's arrest. (ECF 1:11-MJ-0108, 2.) Plaintiff was arrested on January 15, 2011. Three days later, on January 18, 2011, Plaintiff appeared before Magistrate Judge Cott, who ordered Plaintiff detained pending trial. (ECF 1:11-MJ-0108, 3.)

B.      *United States v. Datta*, 1:11-CR-0102

Following a trial presided over by District Judge Kaplan, and prosecuted by, among other prosecutors, AUSA Skinner, a jury found Plaintiff guilty of: (1) conspiracy to commit money laundering, under 18 U.S.C. § 1956(h), and (2) conspiracy to travel internationally in aid of racketeering, under 18 U.S.C. § 371. (ECF 1:11-CR-0102, 88, 90, 180.) On January 20, 2012, Judge Kaplan sentenced Plaintiff to an aggregate prison term of 235 months, to be followed by a supervised release term of three years. (*Id.*) Judge Kaplan also ordered Plaintiff to forfeit funds and property. (1:11-CR-0102, 89.)

Plaintiff appealed. On February 21, 2013, the United States Court of Appeals for the Second Circuit affirmed Plaintiff's conviction, sentence, and the money judgment issued against him. *United States v. Garza-Gonzalez*, 512 F. App'x 60 (2d Cir. 2013) (summary order). On November 4, 2013, the Supreme Court of the United States denied *certiorari*. *Datta v. United States*, 571 U.S. 992 (2013).

---

reference, and . . . matters of which judicial notice may be taken'" when deciding a motion under Fed. R. Civ. P. 12(b)(6)) (citation omitted).

In 2014, Plaintiff sought relief from his conviction by filing his first motion under 28 U.S.C. § 2255. On April 24, 2015, Judge Kaplan denied that motion on the merits. (ECF 1:11-CR-0102, 161) (civil docket number 1:14-CV-8653). Plaintiff later filed multiple motions that Judge Kaplan transferred to the Second Circuit as second or successive Section 2255 motions. (ECF 1:11-CR-0102, 172, 182, 190, 195, 197, 201, 208, 217 (civil docket number 1:20-CV-2330), 220.) The Second Circuit has never granted Plaintiff permission to pursue a second or successive Section 2255 motion as to his conviction or sentence in *Datta*, 1:11-CR-0102.

**C.     The present complaint**

Plaintiff alleges the following in his complaint: On January 15, 2011, Plaintiff was arrested by DEA agents, at an unspecified location within this judicial district, "pursuant to an invalid warrant . . . without probable cause. . . ." (ECF 1:21-CV-2494, 1, at 9, 12.) His arrest was a "kidanpp[ing]." (*Id.* at 12.) After DEA agents took him into custody, they escorted him to their Newark, New Jersey, field office so that he could "plead guilty . . . and do whatever they told [him] to do." (*Id.*) When he refused, they detained him in the Passaic County Jail, in Paterson, New Jersey, until January 18, 2011. (*Id.*)

Judge Kaplan "adjudicated [Plaintiff's] trial lacking subject matter jurisdiction." (*Id.*) Plaintiff "was imposed with unlawful forfeiture in violation of due process of jurisdiction . . . for the offense . . . to which [he] was not party." (*Id.* at 9.) He was also "imposed wit[h] sentence . . . for the offense . . . to which he []was not party." (*Id.*) The Second Circuit "issue[d] the mandate . . . for an offense arranged by the government. . . ." (*Id.* at 12.) Plaintiff "was not tried by the government [and it] did not provide an indictment to" him. (*Id.*) "Agents, Prosecutors, Magistrate Judges, District Judge [and] all Appeal Court Judges working under color of federal law violated several [of Plaintiff's] constitutional rights [and] deprived him from getting Justice after arresting him." (*Id.* at 13.) The "government abused the Judicial power to keep [Plaintiff]

5

illegally incarcerated [as a] 'hostage' from [January 15, 2011, until] this day." (*Id.*) Plaintiff "has been held 'hostage' in federal custody . . . for an offense . . . to which he was not [a] party." (*Id.*)

## DISCUSSION

**A.    Relief under 28 U.S.C. § 2255**

The Court construes Plaintiff's claims in which he asks the Court "to return his good name, [and] close the case [in his] favor" (ECF 1, at 10), as well as any other claims in which he challenges his conviction and sentence in *Datta*, 1:11-CR-0102, as seeking relief with regard to that conviction and sentence under 28 U.S.C. § 2255. Section 2255 "is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence." *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001). But Plaintiff has already challenged, in a Section 2255 motion that Judge Kaplan denied on the merits, his conviction in *Datta*, 1:11-CR-0102. (ECF 1:11-CR-0102, 161) (civil docket number 1:14-CV-8653).

A submission is a second or successive Section 2255 motion when a previous Section 2255 motion challenging the same conviction or sentence was adjudicated on the merits. *See Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998). A court may recharacterize a submission as a second or successive Section 2255 motion without providing the litigant an opportunity to withdraw the submission. *See Jiminian*, 245 F.3d at 148. Because Plaintiff previously filed a Section 2255 motion that was decided on the merits, the Court recharacterizes any claims in the present complaint in which Plaintiff challenges his conviction and sentence in *Datta*, 1:11-CR-0102, as a second or successive Section 2255 motion.

Before a litigant may file a second or successive Section 2255 motion in a district court, authorization from the appropriate court of appeals is required. *See* 28 U.S.C. § 2244(b)(3)(A). Plaintiff has not shown that he has received authorization from the United States Court of Appeals for the Second Circuit to file his second or successive Section 2255 motion. He must

therefore request permission to pursue it from the Second Circuit. Because second or successive Section 2255 motions should be transferred to the appropriate court of appeals, *see Liriano v. United States*, 95 F.3d 119, 122-23 (2d Cir. 1996), in the interest of justice, the Court transfers those claims in Plaintiff's complaint in which he asks the Court "to return his good name, [and] close the case [in his] favor" (ECF 1, at 10), as well as any other claims in which he challenges his conviction and sentence in *Datta*, 1:11-CR-0102, to the Second Circuit as a second or successive Section 2255 motion, *see* 28 U.S.C. § 1631.

**B.    Sovereign immunity**

The Court must dismiss Plaintiff's claims against those defendants who are federal officers – including any claims against federal judges, DEA agents, IRS agents, AUSA Skinner, and other federal prosecutors – for their actions as federal officers in their official capacities. The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including suits against individual federal officers in their official capacities, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

The Federal Tort Claims Act, codified at 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. § 1346(b)(1). "The proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015).

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). If no final written determination is made by the appropriate federal government entity within six months of the date of the claimant's filing, the claimant may bring an FTCA action in a federal district court. *See id.* This requirement is jurisdictional and cannot be waived. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

The Court must dismiss Plaintiff's claims against the federal-officer defendants in their official capacities because those claims are barred by the doctrine of sovereign immunity. And even if Plaintiff had asserted claims under the FTCA against the proper defendant, the United States of America, he has failed to allege facts demonstrating that he has filed an administrative claim under the FTCA with a federal government entity for damages and has subsequently received a final written determination before bringing this action; he has also failed to allege facts showing that it has been more than six months since he has filed such an administrative claim. Accordingly, to the extent that Plaintiff seek relief under the FTCA, the Court dismisses those claims under the doctrine of sovereign immunity due to Plaintiff's failure to exhaust administrative remedies.

**C.       Judicial immunity**

The Court must also dismiss Plaintiff's claims under *Bivens* against District Judge Kaplan, Magistrate Judges Freeman and Cott, and any "Appeal Court Judges" who issued decisions in Plaintiff's criminal and § 2255 proceedings ("the Second Circuit Judges") under the

doctrine of judicial immunity.[4] Under this doctrine, judges are absolutely immune from suit in their individual capacities for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Nieves v. Liman*, No. 20-CV-9503, 2020 WL 7248856, at *2-3 (S.D.N.Y. Dec. 7, 2020) (discussion of doctrine of judicial immunity in context of claims under *Bivens* against a federal judge). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of all jurisdiction." *Mireles,* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff's claims under *Bivens* against District Judge Kaplan, Magistrate Judges Freeman and Cott, and the Second Circuit Judges all arise from these judges' decisions, which they made in their judicial capacities, with regard to Plaintiff's criminal proceedings and his Section 2255

---

[4] Plaintiff's claims under *Bivens* may only be brought against federal officers in their individual capacities, and may only seek damages. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). "[*Bivens*] is the 'federal analog to suits brought against state officials under [Section 1983].'" *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citation omitted). Section 1983 requires a showing that the defendants acted under color of state law to deprive a plaintiff of a federally protected right. Case law from actions brought under Section 1983 may be used to address issues raised in *Bivens* actions. *See Butz v. Economou*, 438 U.S. 478, 498-500 (1978); *Tavares v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

motions. These judges are therefore protected from suit for damages under the doctrine of judicial immunity. Accordingly, the Court dismisses Plaintiff's claims under *Bivens* against District Judge Kaplan, Magistrate Judges Freeman and Cott, and the Second Circuit Judges under the doctrine of judicial immunity.

**D.     Prosecutorial immunity**

The Court must further dismiss Plaintiff's claims under *Bivens* against AUSA Skinner. Prosecutors are immune from civil suits for damages for acts committed within the scope of their prosecutorial duties where the challenged activities are not investigative in nature but, rather, are "'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that Assistant District Attorneys' ("ADAs") directions as to where a criminal defendant would be arraigned was in preparation for a court proceeding in which the ADAs were acting as advocates, and the ADAs were therefore shielded by absolute immunity (citing, *inter alia*, *Goldstein*)).

Here, Plaintiff's claims against AUSA Skinner are based on his actions within the scope of his prosecutorial duties and are associated with the conduct of the criminal proceeding he prosecuted against Plaintiff in this court. Plaintiff's claims under *Bivens* against AUSA Skinner are thus barred by the doctrine of prosecutorial immunity.

E. **Claims of malicious prosecution**

The Court construes Plaintiff's claims in which he challenges: (1) his arrest in this judicial district under an arrest warrant executed by federal agents; (2) his subsequent confinement; and (3) his criminal prosecution in this court in *Datta*, 1:11-CR-0102; as claims of malicious prosecution.[5] But the Court must dismiss these claims.

A claim of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Wallace*, 549 U.S. at 389-90 ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* . . . ) (emphasis in original, footnote omitted); *see also Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 919 n.6 (2017) ("An arrest warrant, after all, is a way of initiating legal process. . . ."); *Johnson v. Teague*, No. 3:12-CV-1223, 2014 WL 2515214, at *2 n.3 (D. Conn. June 4, 2014) ("*Wallace* implies that an arrest based on a court-authorized arrest warrant would not be grounds for a false arrest or false imprisonment claim (as distinct from a malicious prosecution claim)."). To state a claim of malicious prosecution, a plaintiff must allege facts showing: (1) that the defendant initiated or continued a prosecution against the plaintiff; (2) that the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in the plaintiff's favor. *See Barone v. United States*, 722 F. App'x 57, 60 (2d Cir 2018) (summary order) (discussion in *Bivens* context); *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (Section 1983 context); *see also*

---

[5] The Court construes those claims arising from Plaintiff's arrest, confinement, and prosecution by federal officials as claims of malicious prosecution under *Bivens*. The Court construes any claims against Defendant Recinos arising from Plaintiff's confinement in the Passaic County Jail as claims of malicious prosecution under Section 1983.

11

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117-18 (2d Cir. 1995) (discussing the elements of malicious prosecution and noting that "the essence of malicious prosecution is the perversion of proper legal procedures[;] [o]rdinarily, this legal process will be . . . in the form of a warrant") (internal quotation marks and citations omitted). For the purpose of such a claim, a prosecution terminates in a plaintiff's favor when "the criminal proceedings against him [are] terminated in a manner indicating his innocence." *Lanning v. City of Glen Falls*, 908 F.3d 19, 29 (2d Cir. 2018) (Section 1983 context); *Laureano v. United States*, No. 19-CV-10986, 2020 WL1847739, at *2 (S.D.N.Y. Apr. 10, 2020) (*Bivens* context).

Because claims of malicious prosecution under *Bivens* or Section 1983 call into question the validity of a conviction or sentence, a plaintiff cannot assert such a claim unless he is acquitted or, if convicted, his conviction or sentence has been reversed on direct appeal, expunged by executive order, invalidated by a state tribunal authorized to make such determinations, or otherwise called into question by a federal court's issuance of a writ of *habeas corpus*. *See Tavarez*, 54 F.3d at 110 (quoting *Heck v. Humphrey*, 512 U.S. 477 (1994)).

Plaintiff's conviction and sentence in *Datta*, 1:11-CR-0102, have not been overturned or otherwise invalidated at all, let alone, in a manner indicating his innocence. Accordingly, the Court dismisses Plaintiff's claims of malicious prosecution under *Bivens* and Section 1983.

**F.     Personal involvement**

To state a claim under *Bivens* against an individual federal officer or employee, a plaintiff must allege facts showing the individual's direct and personal involvement in the alleged constitutional deprivation. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). An individual defendant may not be held liable under *Bivens* solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*."). Rather, to hold a federal officer liable under *Bivens*, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official. . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (Section 1983 context); *Martin v. Mihalik*, No. 19-CV-7979, 2021 WL 1738458, at *6 (S.D.N.Y. May 3, 2021) (discussing *Bivens* personal involvement requirement in the context of the Second Circuit's decision in *Tangreti*, 983 F.3d at 618).

Plaintiff has alleged no facts about Magistrate Judges Garcia, Gorenstein, or Peck, the other unspecified judges, the IRS agents, or the other unspecified prosecutors. The Court therefore dismisses Plaintiff's claims under *Bivens* against these defendants.

**G.     The Court denies Plaintiff leave to amend**

Generally, a court should not dismiss a *pro se* complaint "without . . . granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). But a court has inherent power to dismiss without leave to amend or replead "where the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *see also Shapiro v. McManus*, 577 U.S. 39, 44-46 (2015) (holding that federal-question jurisdiction is lacking where the claims are "wholly insubstantial and frivolous," "essentially fictitious," or "obviously without merit" (internal quotation marks and citations omitted)).

Because granting Plaintiff leave to amend would be futile, the Court denies Plaintiff leave to file an amended complaint.

## CONCLUSION

The Court dismisses all of Plaintiff's claims, with the exception of those claims that the Court transfers, under the doctrines of sovereign immunity, judicial immunity, prosecutorial immunity, and for failure to state a claim on which relief may be granted. The Court transfers that portion of the complaint that is a second or successive motion under 28 U.S.C. § 2255 to the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 1631.

Because Plaintiff makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   August 2, 2021
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge